*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ERIC JERMAINE WATSON, JR.,

      Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 338110
Wayne Circuit Court
LC No. 16-006746-02-FC

Before: TUKEL, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 15 to 30 years' imprisonment for armed robbery, and one to five years' imprisonment for felon-in-possession, consecutive to two years' imprisonment for felony-firearm. Defendant also appeals the trial court's order denying his motion for a new trial on the basis of newly-discovered evidence after we remanded for the trial court to hear that motion.[1] We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

During the early morning hours of July 1, 2016, the victim in this matter was playing dice on a street corner with DaJuan Jones. The two ended up in a disagreement, and the victim fled in fear. The victim fell while running, Jones approached, and held the victim at gunpoint. At that moment, defendant and Richard James Melton, Jr., approached. Jones asked defendant if he should "kill" the victim, to which defendant responded not to shoot. Defendant and Melton then went through the victim's pockets while he was still held at gunpoint. The victim reported that

---

[1] *People v Watson*, unpublished order of the Court of Appeals, entered September 14, 2018 (Docket No. 338110).

the three men took an LG K7 cellular telephone, $800 in cash, and some cigarettes from him, entered a white Dodge Durango, and defendant drove them away. The victim called 911, reported that he was robbed, and described the aforementioned vehicle. The police identified the white Durango near the scene of the robbery, pulled it over, and discovered defendant driving with Melton in the passenger seat. Jones was not in the car. There were six cellular telephones in the vehicle—one of which was an LG K7 model—and a handgun holster, but no gun. Defendant was found with $1,228 in his pockets.

Later that same day, the victim identified Jones in a photographic lineup. The following day, he identified defendant and Melton in a live lineup. The victim testified at the preliminary examination on August 2, 2016, where defendant and Melton were bound over on the aforementioned charges. Following the preliminary examination, the victim became noncompliant with the prosecution and police.[2] On October 3, 2016, defendant and Melton were set to be tried together, and the prosecution moved to have the victim's preliminary examination testimony admitted as evidence, citing the victim's unavailability. The prosecution also alleged that defendant and Melton had procured the victim's absence from trial by bribing him. The prosecution introduced jailhouse telephone calls of Melton, in which he openly discussed paying the victim money so that he would not come to trial. The trial court held that certain evidence was admissible as against Melton under the forfeiture-by-wrongdoing rule, MRE 804(b)(6). The trial court refused to attribute Melton's wrongdoing to defendant, disagreeing with the prosecution's theory that Melton was acting on behalf of defendant. The trial court, therefore, ordered that defendant and Melton be tried separately, and adjourned defendant's trial until December 15, 2016.[3]

Before defendant's rescheduled trial date, the prosecution once again moved the trial court to find that the forfeiture-by-wrongdoing rule applied to defendant. The trial court again refused, but did find that the victim was unavailable for trial, and that his preliminary examination testimony was admissible. The trial court also admitted the victim's 911 call recording and his identification of defendant. After two days of trial, the jury convicted defendant of all three charges. At sentencing, the victim came forward, and asserted that he wished to recant his testimony from the preliminary examination. According to defendant, the victim intended to testify that there was no gun present during the robbery. The trial court appointed counsel for the victim so that he would understand the potential for perjury charges, and adjourned defendant's sentencing. During the second sentencing hearing, the victim and his counsel informed the trial court that the victim no longer wished to recant, and if called to testify, he would exercise his Fifth Amendment right against self-incrimination. Defendant was sentenced, and this appeal followed.

---

[2] The charges against Jones, who held the victim at gunpoint, were dismissed during his later preliminary examination when the victim did not appear to testify.

[3] Melton later pleaded guilty to armed robbery, felon-in-possession, and felony-firearm. He has not appealed his pleas, and is not a party to this appeal.

Pertinent to this appeal, defendant moved this Court to remand his case to the trial court to hear his motion for a new trial on the basis of newly-discovered evidence. The newly-discovered evidence was the victim's medical records, which revealed a history of mental health issues, and an affidavit from the victim recanting his previous testimony that a gun was present at the robbery. The trial court found that the newly-discovered evidence was not credible, and would not have changed the outcome of trial. Thus, the court denied defendant's motion. The case is now before us for summary consideration.

## II. UNAVAILABLE WITNESS & THE CONFRONTATION CLAUSE

Defendant argues that the trial court erred when it determined that the prosecution had been reasonably diligent in finding the victim before the trial court declared the victim unavailable at trial, violating the rules of evidence and defendant's constitutional right of confrontation. We disagree.

### A. PRESERVATION

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Additionally, "an objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Bulmer*, 256 Mich App 33, 34-35; 662 NW2d 117 (2003). As properly argued by the prosecution on appeal, defendant objected to the evidence being admitted at trial; however, he did not do so on the grounds now presented—that the prosecution was not duly diligent in finding the victim. Instead, defendant objected on the ground that the victim failed to appear at trial because he lied during the preliminary examination. As discussed in *Aldrich*, 246 Mich App at 113, and *Bulmer*, 256 Mich App at 34-35, defendant's objection on that ground is not sufficient to preserve his argument on appeal that the prosecution did not exercise due diligence in trying to find the victim. Thus, this issue is not preserved for our review. *Bulmer*, 256 Mich App at 34-35; *Aldrich*, 246 Mich App at 113. As for defendant's argument on appeal that his constitutional right to confrontation was violated by the victim's absence, defendant made that objection, so that issue is preserved for our review. *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994).

### B. STANDARD OF REVIEW

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). " '[W]hen such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law.' " *People v Henry*, 315 Mich App 130, 143; 889 NW2d 1 (2016), quoting *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999) (citations omitted).

However, because this issue has not been preserved for review, we must review the "unpreserved claim for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* As such, "[r]eversal is only warranted if defendant was actually innocent and the plain error caused defendant to be convicted or 'if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings," ' regardless of defendant's innocence." *Roscoe*, 303 Mich App at 648, quoting *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004), quoting *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

With respect to the preserved error, "[w]hether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

## C. APPLICABLE LAW & ANALYSIS

The trial court did not plainly err or violate defendant's constitutional right to confrontation in determining that the victim was an unavailable witness, and admitting the victim's preliminary examination testimony.

"A defendant has the right to be confronted with the witnesses against him or her." *People v Yost*, 278 Mich App 341, 369-370; 749 NW2d 753 (2008) citing US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "The purpose of the Confrontation Clause is to provide for a face-to-face confrontation between a defendant and his accusers at trial." *People v Bean*, 457 Mich 677, 682; 580 NW2d 390 (1998) (quotation marks and brackets omitted). "This confrontation is an important right of the defendant because it enables the trier of fact to judge the witnesses' demeanors." *People v Dye*, 431 Mich 58, 64; 427 NW2d 501 (1988) (opinion by LEVIN, J.). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 US at 68. Included within the definition of "testimonial evidence" is a witness's "prior testimony at a preliminary hearing . . . ." *Id*.

"Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). "A witness is considered unavailable if he or she is 'absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown.' " *Yost*, 278 Mich App at 370, quoting MRE 804(a)(5). "The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts

-4-

were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

Defendant argues on appeal that the trial court erred in determining that the prosecution exercised due diligence and a good-faith effort in its attempts to ensure that the victim was at trial. The issue of the victim's unavailability first arose when defendant and Melton were set to be tried together on October 3, 2016. At that hearing, the prosecution provided the following statement regarding the efforts to locate the victim:

> I had filed recently a motion to introduce the statement of [the victim]. [He] is the only victim, and only civilian witness in this case. He was the victim of an alleged armed robbery that took place on July 1st of this year.

> My Officer in Charge, Sergeant Dasumo Mitchell, is currently the Officer in Charge in a homicide case this morning [in another] courtroom, otherwise he would be here today. He had made efforts to locate [the victim] throughout this process. [The victim] did provide testimony at the Preliminary Examination, however recent efforts to location [sic] [him] have failed.

> On Friday, this past Friday, on the 30th of September, the People had this court issue a witness detainer for [the victim] to locate him over the weekend. Efforts by the Officer in Charge, Sergeant Dasumo Mitchell, who I believe Detective Dawson who just walked in the courtroom today, was also present during the attempted apprehension of [the victim]. They went to his known address and he was not there.

> In addition, Judge, the People have had contact with the grandfather [] of [the victim]. I spoke to [the victim's grandfather] on September 29th. He indicated to me that his grandson was not going to come to court, that he had had a conversation with him the previous day in which [the victim] had indicated that he was paid some money to not appear in court.

> In addition to all of that, Your Honor, the People have listened to numerous jail calls from both Defendants, Eric Watson and Richard Melton. Over the course of time spanning from July of this year, shortly after the incident, all the way to, I believe it was the end of September of this year, there were approximately eleven phone calls that demonstrates an active participation to secure the absence of [the victim] in this trial.

> I have laid out in explicit detail all of the phone calls and the dates of those or those times in which Mr. Melton placed all of those calls, but references not only [Jones] but somebody by the name of Chedda, C-h-e-d-d-a, which through jail calls have been interpreted to be the person identified as [defendant] Eric Watson.

Also, Judge, the way that these jail calls have played out is a systematic and active scheme to try to secure the absence of [the victim]. And today, as of 9:15 or 9:16, [the victim] is nowhere to be found.

I believe Sergeant Dotson can attest to that, and his efforts as well. We have clear information, Judge, that [the victim] was, in fact, paid, that there's an active participation to try to pay by this—by Mr. Melton, as well as through incorporation, Mr. Watson . . . .

Following those statements by the prosecution, Officer Danny Dotson was called to testify regarding the efforts of the police to locate the victim. He stated that he and Officer Mitchell went to the victim's house and searched local hotels and motels, where they suspected the victim might be staying. The prosecution further argued that the witness was unavailable because of the jailhouse telephone calls made by Melton. Those telephone calls, which were transcribed in various briefs and the content of which is not challenged, clearly show that Melton was in contact with several people who conspired to pay the victim money so that he would not come to trial.

On the first day of defendant's trial, the prosecution once again moved the trial court to admit the victim's preliminary examination testimony based on his unavailability, and attempted to connect defendant to Melton's procurement of the victim's unavailability by reading defendant's jailhouse telephone calls into the record, the content of which has not been challenged. In those calls, defendant and an unknown caller have vague conversations about ensuring that a "situation" is "straight." Defendant argued, and the trial court agreed, that those conversations by defendant were not specific enough to connect him to Melton's behaviors. Therefore, the trial court held that the victim's absence was not attributable to defendant, so the forfeiture-by-wrongdoing rule, MRE 804(b)(6), was inapplicable.

The trial court did, however, determine that the victim was unavailable under MRE 804(a)(5), and requested that the prosecution update the record regarding the continuing location efforts. The prosecution informed the trial court that Officer Mitchell had continued to search for the victim, without luck, since the previous date of trial, two months earlier. Following the determination by the trial court that the victim was unavailable, defendant objected on the ground that the victim was not at trial because he was a liar, not because he was paid off by Melton. Defendant did not, in any manner, challenge the prosecution's recitation of the efforts made to locate the victim.

With regard to a witness's unavailability, "[t]he test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Bean*, 457 Mich at 684. The trial court was presented with evidence that, initially, the prosecution did not expect that the victim would become unavailable. Indeed, he was compliant after the robbery when he came to the police station to perform identifications on two different occasions, and attended the preliminary examination to testify.

As the October 3, 2016 trial date approached, however, the prosecution grew concerned about the victim's reliability. On September 29, 2016, the prosecution attempted to reach the

victim. Instead, the prosecution spoke to the victim's grandfather, who informed the prosecution that the victim would not appear at trial because he had been paid not to attend. The prosecution then obtained a witness detainer order from the trial court on September 30, 2016. The police attempted to detain the victim that day, but were unable to find him. The prosecution informed the trial court that Officer Mitchell made several attempts to reach the victim at his known address. Officer Dotson testified that he and Officer Mitchell went to the victim's house, but could not find him. The prosecution also reviewed Melton's jailhouse telephone calls, and discovered Melton's scheme to pay off the victim. The prosecution noted that Melton likely arranged for the victim to stay in a motel or hotel to avoid being found by police or the prosecution. Officer Dotson testified that he and Officer Mitchell, presumably being aware of the information obtained in the jailhouse telephone calls, also searched area hotels and motels. On the date that defendant's trial was set to begin, December 15, 2016, the prosecution informed the trial court that, while it was confident that Melton and defendant had procured the victim's absence, Officer Mitchell continued his efforts to locate the victim at his last known address. As previously noted, defendant did not object on the ground that these efforts were unreasonable or not duly diligent.

Considering all of these facts, the trial court did not err in finding that the victim was unavailable as a witness in light of the prosecution's duly diligent efforts to locate him. MRE 804(a)(5). The prosecution did not just attempt to call the victim, or go to his home. Instead, the prosecution took the extra steps of listening to the jailhouse telephone calls, and speaking to the victim's grandfather. On the basis of the information provided in the telephone calls and from the victim's grandfather, the prosecution became aware that the victim may have been lodged in a hotel to avoid trial. Officers Dotson and Mitchell then used that newly acquired information to search hotels in the area of the victim's home. Finally, even after the prosecution and police were aware that the victim likely would not be found because he was being paid not to be, they still continued to attempt to contact the victim, and went to his known address.

The attempts made by the prosecution and the police, under the circumstances of this case, were reasonable and duly diligent. *Bean*, 457 Mich at 684. Two factors are of primary importance in this case. First, before the victim went missing, the prosecution had no reason to believe that he would be unavailable for trial. This factor distinguishes the present case from *Dye*, 431 Mich at 61-62, because in that case, the prosecution was aware that certain witnesses wished to avoid testifying.

Specifically, the Court in *Dye* noted that the defendant in that case previously had been tried, which resulted in a mistrial. *Id*. The witnesses in question "were in protective custody immediately preceding and until they completed their testimony at the first trial, and were then released." *Id*. at 61. They were held in protective custody because the defendant was a member of a motorcycle gang, and the prosecution wished "to prevent other 'bikers' from harming them." *Id*. at 63. When a second trial was required after a mistrial, the prosecution made only "tardy and incomplete" attempts to find the witnesses. *Id*. at 62. In making that finding, the Court relied on the fact that the witnesses "had been difficult to locate for the first trial," the officer in charge "knew that each [witness] was going out of state" after being released, the witnesses "had an incentive to go into hiding," and the threat to the witnesses' safety "remained after their release." *Id*. at 67. Despite that knowledge, and while aware that a second trial was necessary, the prosecution made no efforts to remain in contact with the witnesses for two months after the

mistrial. *Id*. at 67-68. It was this negligent behavior by the prosecution upon which our Supreme Court primarily relied when determining that any efforts by the prosecution to locate the witnesses after those two months were "tardy and incomplete." *Id*. at 68.

This distinction is important because the efforts of the prosecution in a case where it is aware that a witness has a reason to avoid testifying necessarily must be more thoroughly scrutinized. As our Supreme Court has made clear, what is reasonable in some circumstances might not be reasonable in others. See *Bean*, 457 Mich at 684. ("The test is one of reasonableness and depends on the facts and circumstances of each case . . . ."). Had the trial court been presented with the same factual circumstances as the case in *Dye*, 431 Mich at 67-68, the efforts by the prosecution in this case would have been highly suspect. Even so, the Court might still have reached a different conclusion because there was no evidence that the prosecution's efforts in this case were "tardy." Because the prosecution and the police were not aware of the victim's intent to avoid testifying until he disappeared, the due diligence expected of the prosecution in *Dye* simply is not applicable to the facts of this case. See *Bean*, 457 Mich at 684.

The second important distinguishing factor in this case is that the prosecution was aware that the victim was being paid to avoid testifying. While the prosecution and the police attempted to use that knowledge to search local motels and hotels, which was a reasonably diligent step to take, it also limited other investigatory techniques that otherwise might be required. For instance, it would be illogical to stakeout the victim's home when it was highly unlikely that he would return, on the basis of the fact that he likely was at a hotel. Further, continuing to try and call the victim would be ineffective because he had good reason not to answer his telephone for the police. It also would be unreasonable to expect the prosecution to track a credit or debit card of the victim, assuming he had one, or that information was available, because the victim was being paid cash to stay in hiding, as reflected in Melton's telephone calls. When the prosecution is aware that a witness is purposely attempting to avoid being found and is being paid to do so, the same rigorous standards provided in *Dye* and *Bean* are not applicable.

Defendant also contends on appeal that the trial court erred by relying on the prosecution's explanation of the efforts made to locate the victim, rather than calling the police officers as witnesses. However, when considering whether a witness is unavailable, this Court has permitted a trial court to rely on statements by the prosecution where "[t]he trial court had no reason to disbelieve the prosecution's representation . . . and defense counsel could have clarified any possible ambiguity . . . by requesting clarification." *Garland*, 286 Mich App at 8, citing *People v Dunbar*, 463 Mich 606, 617 n 13; 625 NW2d 1 (2001) (holding that because attorneys are subject to numerous "provisions intended to ensure candor . . . in the absence of evidence to the contrary, we will accept a licensed attorney's assertion to a court."). Initially, contrary to defendant's argument, the prosecution, in addition to its own statements, also provided the testimony of Officer Dotson. Plus, it was not error for the trial court to rely on the prosecution's statements because the same standard discussed in *Garland*, 286 Mich App at 8, is applicable here. Had defense counsel objected or requested clarification on the record, Officer Mitchell would have come to the stand and testified in more detail about the efforts made to find the

victim.[4]  However, defendant did not do so, and the trial court was not provided any reason to disbelieve the prosecution, so the trial court's reliance on the prosecution's recitation of facts was not in error. *Id*.

In sum, on the basis of the specific facts of this case, the trial court did not err in determining that the prosecution made "diligent good-faith efforts . . . to procure the testimony" of the victim. *Bean*, 457 Mich at 684.  Thus, the trial court did not abuse its discretion in holding that the victim was unavailable under MRE 804(a)(5), and his preliminary examination testimony was admissible under MRE 804(b)(1).

Alternatively, defendant argues that the victim's absence from trial violated his constitutional right to confrontation.  However, as this Court has held, "[f]ormer testimony is admissible at trial under . . . the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *Garland*, 286 Mich App at 7.  Such is the case here because, as just discussed in great detail, the victim was unavailable to testify, and as is obvious from the record, the victim was subjected to cross-examination during his former testimony.  See *Garland*, 286 Mich App at 7.  Thus, this argument by defendant is without merit. *Id*.

## III.  SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of felon-in-possession.  In defendant's Standard 4 brief, he also argues that there was insufficient evidence to sustain his conviction of armed robbery.  We disagree on both accounts.

### A.  STANDARD OF REVIEW & GENERAL LAW

" 'We review de novo a challenge on appeal to the sufficiency of the evidence.' " *Henry*, 315 Mich App at 135, quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).  "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (citation and quotation omitted).  " 'The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).  To

---

[4] In fact, when Officer Mitchell was called to testify the following day, he discussed some of his location efforts.  In addition to all of the evidence already recounted by the prosecution and Officer Dotson, Officer Mitchell provided that he "sat outside [the victim's] house a few hours waiting to see if he was going to leave out of the door, come in."  During that wait, he had "the police called on" him.  Officer Mitchell explained that the victim's "mother was upset about us being there so she called the police on the police."

the extent that this appeal requires statutory interpretation, this Court reviews that issue de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

There is sufficient evidence for a guilty verdict where " 'a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *Tennyson*, 487 Mich at 735 (citation omitted). "The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Henderson*, 306 Mich App at 9. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

## B. FELON-IN-POSSESSION

There was sufficient evidence to sustain defendant's conviction of felon-in-possession.

"Felon-in-possession is a statutory offense that is set forth by MCL 750.224f," and has "two essential elements . . . ." *People v Bass*, 317 Mich App 241, 267; 893 NW2d 140 (2016). Those elements are: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *Id*. at 268, citing MCL 750.224f.

Defendant makes an interesting, though meritless, argument on appeal. Defendant contends that the prosecution's sole ground to convict defendant of felon-in-possession was under an aiding and abetting theory. Defendant focuses on the fact that the prosecution acknowledged during closing argument that defendant never physically possessed the gun. Thus, defendant reasons, the prosecution must have been attempting to prove that defendant aided or abetted Jones in his commission of the crime of felon-in-possession. Defendant is correct that to prevail on such grounds, "the crime itself must be proved, and the defendant must have rendered some kind of assistance or encouragement to the commission of that crime with the intent that the crime occur or the knowledge that the principal intended for the crime to occur." *Blevins*, 314 Mich App at 358. Because the prosecution did not present any evidence that Jones was a "felon" under MCL 750.224f, defendant argues that the "crime itself" was never proven. See *Blevins*, 314 Mich App at 358. Defendant is incorrect that actual possession or aiding and abetting were the prosecution's only avenues to prove defendant's guilt of felon-in-possession.

Our Supreme Court "has held that for possessory crimes in Michigan, actual possession is not required; constructive possession is sufficient." *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). "[A] person has constructive possession if there is proximity to the article together with indicia of control." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (quotation marks omitted; alteration in original). "The test for constructive possession is whether 'the totality of the circumstances indicates a sufficient nexus between defendant and the contraband.' " *Minch*, 493 Mich at 91-92, quoting *People v Johnson*, 466 Mich 491, 500; 647 NW2d 480 (2002). "Although not in actual possession, a person has constructive possession if

he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ." *Minch*, 493 Mich at 92 (quotation marks omitted; alteration in original).

In addition to constructive possession, Michigan courts also have recognized joint possession. *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011) ("Possession of a firearm may be sole or joint . . . ."). The caselaw allows for a conviction of felon-in-possession under "the theory of joint firearm possession if the evidence suggests two or more defendants acting in concert." *People v Hill*, 433 Mich 464, 471; 446 NW2d 140 (1989). In any case, "[p]ossession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact." *Johnson*, 293 Mich App at 83.

As noted, to convict defendant of felon-in-possession there needed to be sufficient evidence that defendant was a felon and possessed a firearm. See *Bass*, 317 Mich App at 268. Defendant stipulated to the fact that he had a prior felony, and therefore, under MCL 750.224f, he was not permitted to possess a firearm. Thus, the only question for the jury to consider was whether defendant possessed the firearm. See *id*. The prosecution presented evidence that Jones chased down the victim and held him at gunpoint while defendant and Melton went through the victim's pockets, eventually taking cigarettes, a cellular telephone, and $800 in cash. The victim testified that Jones asked defendant if he should "kill" the victim, to which defendant answered not to shoot. Later, when defendant was pulled over by police in the white Durango—in which the victim saw defendant drive away from the scene of the robbery—there was a handgun holster in the vehicle.

On the basis of those facts, a reasonable jury was well-supported in inferring that defendant and Jones were "acting in concert," and thus, jointly possessed the firearm that Jones held. See *Hill*, 433 Mich at 471. It was the jury's role "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. Here, the jury inferred from the foregoing evidence that defendant and Jones were working together—Jones held the gun while defendant relieved the victim of his property and cash. Consequently, there was sufficient evidence for the jury to find that defendant jointly possessed the firearm with Jones, and thus, was guilty of committing felon-in-possession. See *id*; see also *Hill*, 433 Mich at 471. The prosecution's failure to present evidence that Jones committed felon-in-possession was irrelevant because, for the purposes of that crime, defendant did not aid and abet Jones, but rather, acted in concert with him, and was also the principal under the concept of joint possession. See *Hardiman*, 466 Mich at 428.

## C. ARMED ROBBERY

There was sufficient evidence to sustain defendant's conviction of armed robbery.

We recently restated "[t]he elements necessary to prove armed robbery under MCL 750.529" in *People v Muhammad*, 326 Mich App 40, 61; ___ NW2d ___ (2018) (quotation marks omitted):

> (1) [T]he defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any

person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

Pertinently, the armed robbery statute requires the commission or attempted commission of "a larceny of any money or other property . . . ." *Id*. Our Supreme Court has held that Michigan has " 'no statutory definition of larceny, and all our statutes use it in its common law sense.' " *People v March*, 499 Mich 389, 399; 886 NW2d 396 (2016), quoting *Morrissey v People*, 11 Mich 327, 336 (1863). The Court in *March* then held that, for larceny, "the common law can be parsed in turn into the following elements: (a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *March*, 499 Mich at 401.

Defendant's argument on appeal focuses solely on the larceny aspect of the armed robbery statute. Specifically, defendant asserts that the prosecution failed to introduce sufficient evidence to prove that defendant took and carried away the personal property of the victim. His argument focuses on the alleged lack of evidence that the cellular telephone and $800 taken from the victim was determinatively proven to be one of the six cellular telephones and some of the $1,228 found in defendant's car and in his pockets, respectively. Defendant's argument is without merit. The prosecution introduced the victim's testimony from the preliminary examination, in which he stated that defendant went through his pockets while he was held at gun point. In the process of going through his pockets, defendant and Melton removed cigarettes, a cellular telephone, and $800 in cash. Officer Amjade Issa, meanwhile, testified that he heard from the victim that the cellular telephone taken from him was an LG K7 model. When defendant was arrested, he had $1,228 of cash in his pockets and six cellular telephones in his vehicle, one of which was an LG K7.[5]

While Officer Issa never was able to verify that the LG K7 found in the vehicle was the exact telephone that was taken from the victim, and no evidence was introduced that the same denominations of money taken from the victim were found in the vehicle, such determinative and specific evidence is not required to satisfy the requirements for a conviction. As this Court has held, "[c]ircumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *Blevins*, 314 Mich App at 357. Here, the jury was well-supported to infer that the LG K7 cellular telephone found in defendant's vehicle was the same as the one taken from the victim. See *id*. Further, the jury could also

---

[5] Defendant's argument appears to impliedly rely on the presumption that the larceny must have been completed in order to sustain his armed robbery conviction. He is incorrect. *People v Williams*, 491 Mich 164, 183; 814 NW2d 270 (2012) (holding that a defendant "may be guilty of armed robbery even if the larcenous taking is not completed."). Thus, to the extent he has relied on that mistaken statement of law, his argument is without merit. *Id*.

reasonably infer that $800 of the $1,228 found in defendant's pocket was the money taken from the victim during the robbery. See *id*. Those inferences were further supported by the jailhouse telephone call made by defendant, in which he admitted to going through the victim's pockets. Because "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences," this Court will not disturb the jury's decision to believe that the cellular telephone and cash found in defendant's possession belonged to the victim. *Hardiman*, 466 Mich at 428.

In sum, defendant's challenge to the larceny element of his armed robbery conviction is without merit because the record provides abundant support for the jury's verdict. See *id*. Although defendant does not challenge the remaining elements of the armed robbery conviction, it is clear that there was sufficient evidence to support that conviction considering the victim's testimony that he was held at gunpoint and threatened to be shot while the larceny occurred. See *Muhammad*, 326 Mich App at 61.

## IV. THE JURY'S REQUEST TO REHEAR THE VICTIM'S TESTIMONY

Defendant argues that the trial court abused its discretion by declining the jury's request to rehear the victim's testimony during deliberations. This issue has been waived and the error extinguished.[6]

"[I]ssues for appeal must be preserved in the record by notation of objection . . . ." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). A failure to properly object to an issue forfeits that issue, but does not extinguish the error; instead, it allows for plain error review. *Id*. at 215-216. See also *Carines*, 460 Mich at 763. Waiver, however, occurs when a defendant "affirmatively approve[s]" an issue before the trial court, only to later argue on appeal that there was error. *People v Jackson*, 313 Mich App 409, 420; 884 NW2d 297 (2015). When waiver occurs, unlike forfeiture, the error is extinguished. *Carter*, 462 Mich at 215.

Here, after deliberating for about 90 minutes, the jury submitted a request to the trial court to rehear the victim's testimony. The trial court called the jury into the courtroom and instructed the jurors to rely on their collective memories. When the jury returned to deliberate, the trial court asked if the parties agreed with the instruction. Defense counsel answered, "[y]es, your Honor." Considering that defendant, via his counsel, "affirmatively approved the jury instruction as read . . . [he] has [] waived his right to challenge any error in [that] instruction." *Jackson*, 313 Mich App at 420. In other words, the error is extinguished. *Carter*, 462 Mich at 215.

---

[6] Defendant's alternative argument that defense counsel was ineffective for agreeing to the trial court's instruction will be addressed in Section V(C)(1) of this opinion.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that defense counsel was ineffective for a multitude of reasons. For the reasons addressed individually herein, we disagree.

### A. PRESERVATION & STANDARD OF REVIEW

In order to preserve a claim of ineffective assistance of counsel, defendant was required to "move the trial court for a new trial or a *Ginther*[7] hearing." *Jackson*, 313 Mich App at 431 (footnote added). While defendant twice moved the trial court for a new trial on remand, he did not do so on the grounds presented in this issue on appeal. Thus, this issue has not been preserved for our review. See *id*. "Appellate review of an unpreserved argument of ineffective assistance of counsel, like this one, is limited to mistakes apparent on the record." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). " 'The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo.' " *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

### B. GENERAL LAW

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second guess matters of trial strategy. *Thomas*, 260 Mich App at 457; *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also]

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (alteration in *Cooper*).

## C.  APPLICABLE LAW & ANALYSIS

Defendant argues that defense counsel was ineffective at trial for failing to object to the trial court's instruction to the jury regarding rehearing the victim's testimony.  In his Standard 4 brief, defendant also argues that defense counsel was ineffective for failing to object to hearsay evidence, character evidence, and prosecutorial errors, and to investigate and introduce evidence of valid defenses.  We address each in turn.

## 1.  THE JURY'S REQUEST TO REHEAR THE VICTIM'S TESTIMONY

Assuming without deciding that defense counsel would have had a valid objection to the trial court's instruction to the jurors to rely on their collective memories instead of rehearing the victim's testimony,[8] defendant's argument that defense counsel was ineffective for failing to object to that potentially erroneous instruction is meritless for two reasons.

First, defendant has failed to "overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).  As this Court has noted, experienced attorneys are "certainly aware that 'there are times when it is better not to object[,]' " even to obvious errors. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citation omitted).  This is such a case.  The jurors requested to rehear testimony of the victim, the witness who provided the most damaging evidence against the defense.  Indeed, defendant tacitly acknowledges the prejudicial nature of the victim's testimony by arguing that the trial court should never have admitted it, citing it as the sole testimony that a gun was involved in the robbery.  Had defense counsel objected to the trial court's instruction under the circumstances presented here, he essentially would have been advocating for the jury to be permitted to rehear the most damaging testimony in the case.  Thus, even though defense counsel potentially had a legitimate objection to make, considering MCR 2.513(P), the record supports that it was sound trial strategy to withhold that objection. *Unger*, 278 Mich App at 242.  Therefore, defendant failed to overcome the presumption that defense

---

[8] See, e.g., *Carter*, 462 Mich at 208.  MCR 2.513(P) provides:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

counsel's action was sound trial strategy, and thereby failed to fulfill the first prong of the *Strickland* analysis. *Strickland*, 466 US at 688; *Toma*, 462 Mich at 302.

The second reason that defendant's argument fails is interrelated to the first reason—defense counsel's alleged error did not affect the outcome of the trial because it resulted in the jury being stopped from rehearing damaging testimony. Under the second prong of the *Strickland* framework, defendant is required to prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. For the reasons just discussed, however, defense counsel's failure to object was a matter of sound trial strategy because to do otherwise would have amounted to advocating for the jury to hear damaging testimony a second time. Consequently, there was no reasonable probability that an objection by defense counsel under these circumstances would have changed the outcome of trial. See *id*. On appeal, defendant engages in a convoluted analysis of this issue, asserting that because the jury requested to hear the testimony, certain jurors must have doubted the veracity of the victim's testimony. Defendant then asserts that the jurors in doubt, upon being informed that they could not rehear the testimony, decided to abandon their doubt in favor of conviction. Because this issue is unpreserved, our review "is limited to mistakes apparent on the record," *Johnson*, 315 Mich App at 174, and there is nothing on the record to support defendant's argument. Rather, defendant relies on his own conjecture and circuitous logic, which is not enough to satisfy his burden of "establishing the factual predicate for his claim." *Cooper*, 309 Mich App at 80 (quotation marks omitted). Therefore, defendant also fails to fulfill the second prong of the *Strickland* analysis.[9] *Strickland*, 466 US at 694.

## 2. HEARSAY EVIDENCE

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay evidence is inadmissible unless it falls within one of the exceptions listed in the Michigan Rules of Evidence." *People v Solloway*, 316 Mich App 174, 199; 891 NW2d 255 (2016), citing MRE 802. "If, however, the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013).

Defendant argues on appeal that defense counsel should have objected to Officer Issa's testimony regarding the victim's statement that his cellular telephone was blue because it was

---

[9] For this same reason, even if defense counsel had not waived the issue of whether the trial court's instruction to the jury was improper and this Court determined that the trial court abused its discretion, reversal still would not have been warranted. If the issue merely was forfeited rather than waived, defendant still would have had to make "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. He would have failed in that regard because the trial court's error kept the jury from rehearing testimony that was damaging to the defense. See *id*.

inadmissible hearsay. Officer Issa's testimony regarding the victim's statement, however, was not hearsay because it was not "offered in evidence to prove the truth of the matter asserted." MRE 801(c). See also *Musser*, 494 Mich at 350. Rather, when Officer Issa was cross-examined, he was questioned about why he did not go through each of the six cellular telephones that were found in defendant's vehicle. In response, he stated that he did not go through all of them because he quickly identified the cellular telephone that he was looking for—the blue LG K7. He testified that he stopped inspecting the telephones at that point because the blue LG K7 was the make, model, and color that the victim complained about being stolen from him. Thus, Officer Issa's testimony regarding the victim's statement that he had a blue cellular telephone stolen from him was not to prove that the victim actually had that color telephone taken from his possession. Instead, the testimony was to explain why Officer Issa conducted his investigation in the manner in which he did. As this Court has held, "a statement offered to show why police officers acted as they did is not hearsay." *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). Consequently, because Officer Issa's testimony was not hearsay, MRE 801(c), and was thus admissible, *Chambers*, 277 Mich App at 11, defense counsel could not possibly have been ineffective by failing to object to the evidence because any objection would have been futile. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (holding that "defense counsel was not ineffective for failing to make a meritless or futile objection.").

Defendant also argues that defense counsel failed to object to the hearsay statements of the officers regarding the fact that the victim identified defendant quickly, and that the victim heard defendant's name from his cousin. Recall that " '[h]earsay' is a *statement*, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c) (emphasis added). A "statement" meanwhile is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). "Thus, physical conduct or reactions are *not* hearsay as long as the conduct or reactions are not intended as assertions." *People v Gursky*, 486 Mich 596, 625 n 55; 786 NW2d 579 (2010). As noted, defendant challenges defense counsel's failure to object to the officers' testimony that the victim identified defendant incredibly quickly during the live lineup at the police station on the day after the robbery. Defendant argues that the officers' testimony in that regard was inadmissible hearsay. Simply stated, the rate at which the victim identified defendant was physical conduct that the victim obviously did not "intend[] . . . as an assertion." MRE 801(a). Therefore, the officers' testimony was not regarding a "statement" by the victim, under MRE 801(a), and thus was not hearsay under MRE 801(c). See *Gursky*, 486 Mich at 625 & n 55. In sum, defense counsel was not ineffective for failing to object to testimony where his objection would have been futile. *Head*, 323 Mich App at 539.

Defendant also asserts that the officers' testimony regarding the victim's discovery of defendant's name was inadmissible hearsay. However, a review of the record reveals that it was the victim who testified that he discovered defendant's name from his cousin. The only statement made by any officer regarding the victim's cousin was Officer Mitchell's testimony that the cousin in question knew Jones, and that was how the victim met him. No officer testified about the victim's cousin telling the victim defendant's name. Therefore, defendant cannot establish ineffective assistance of counsel because he failed to bear his "burden of establishing the factual predicate for his claim." *Cooper*, 309 Mich App at 80 (quotation marks omitted).

Although a bit unclear, defendant appears to argue that in addition to being inadmissible hearsay, the admission of all of the above evidence also violated his constitutional right under the Confrontation Clause, and defense counsel was ineffective for failing to move for it to be stricken. That argument plainly is without merit. First, with respect to Officer Issa's testimony regarding the color of the cellular telephone, "[b]ecause the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted, the testimony did not violate defendant's right of confrontation." *Chambers*, 277 Mich App at 11. See also *Crawford*, 541 US at 59 n 9. As for the officers' testimony regarding the quickness with which the victim identified defendant, it was the officers in question that observed the victim's rate of identification, and those officers plainly were available for cross-examination about what they witnessed, thereby satisfying the Confrontation Clause. See *People v Bruner*, 501 Mich 220, 229; 912 NW2d 514 (2018) (holding that a defendant's "confrontation right would have been vindicated by cross-examining" the witness at issue).

To the extent that defendant appears to argue that he was barred from cross-examining the victim regarding his identification of defendant and the victim's discovery of defendant's name from his cousin, such an argument clearly is without merit where—as discussed in more depth above—the victim identified defendant, testified about his cousin during the preliminary examination, and was cross-examined regarding that evidence by defendant's counsel at the time.[10] See *id*. at 227, quoting *Crawford*, 541 US at 59 (" 'Testimonial statements of witnesses absent from trial' may be admitted 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.' "). Considering that there was no confrontation issue, defense counsel was not ineffective for failing to make a futile objection on that ground. See *Head*, 323 Mich App at 539.

In sum, defendant's argument that defense counsel was ineffective for failing to object to various hearsay evidence and Confrontation Clause issues fails the first prong of the *Strickland* analysis because abstaining from making futile objections is not objectively unreasonable. *Strickland*, 466 US at 688; *Head*, 323 Mich App at 539.

### 3. INVESTIGATION AND INTRODUCTION OF EVIDENCE

Defendant next argues that defense counsel was ineffective for failing to investigate and introduce evidence that would have provided him with a valid defense. "Decisions pertaining to what evidence to present . . . are presumed to be matters of trial strategy." *People v Bosca*, 310 Mich App 1, 36; 871 NW2d 307 (2015). "Defense counsel's failure to present certain evidence

---

[10] Furthermore, as also discussed in this opinion, defense counsel objected to admission of the victim's identification of defendant in his preliminary examination on the grounds of a constitutional confrontation violation. That objection was overruled because it was without merit. Consequently, defendant's allegation that defense counsel was ineffective for failing to make an objection that he actually made is without merit, because defendant failed to prove the factual predicate for his claim. See *Cooper*, 309 Mich App at 80.

will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). "A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Defense counsel also has a " 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *People v Ackley*, 497 Mich 381, 391; 870 NW2d 858 (2015), quoting *Hinton v Alabama*, 571 US 263, 274; 134 S Ct 1081; 188 L Ed 2d 1 (2014) (citation omitted). "The failure to reasonably investigate a case can constitute ineffective assistance of counsel." *People v Anderson*, 322 Mich App 622, 630; 912 NW2d 607 (2018). Similar to allegations of a failure to produce evidence, "the failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *Id*. at 631 (quotation marks and brackets omitted).

During the trial, the victim's preliminary examination testimony was read into evidence. In that testimony, the victim stated that he went to a gas station around 3:00 a.m. to obtain money with which to gamble. Defendant asserts on appeal that, had defense counsel investigated and introduced evidence that the victim could not have withdrawn $800 from a gas station Automated Teller Machine (ATM) because such transactions were limited to $250, then the jury would have believed that the victim stole the money in question, which then would have caused the jury to question the victim's credibility. Defendant's argument is flawed for a number of reasons. Initially, defendant failed to prove the factual predicate for his claim. See *Cooper*, 309 Mich App at 80. The record contains no evidence that the victim would have been limited in the amount of money that he could have obtained from a gas station. Moreover, the victim simply testified that he went to a gas station to get money with which he planned to use to gamble. He never specifically stated that he intended to withdraw money from an ATM. Indeed he testified both that he planned to cash a check and get "money off a card at the gas station." Therefore, even assuming that defendant is correct that a gas station ATM is limited to $250 withdrawals, the record also supports that the victim could have obtained additional money from cashing a check. Defendant's failure to establish the factual predicate is fatal to his claim. See *id*.

Defendant's argument regarding the money obtained by the victim at a gas station is also flawed because defendant's suggestion that proper investigation and introduction of evidence would have provided a "substantial defense" is entirely without merit. See *Putman*, 309 Mich App at 248. The reason defendant's argument fails is plain when considering the evidence that would have been presented to the jury if everything defendant argues should have occurred did occur. For example, assume that defense counsel investigated the gas station at which the victim obtained money, discovered that the ATM at that gas station only allowed for $250 withdrawals and potentially did not cash checks, and then introduced that evidence at trial. That evidence would not have supported a substantial defense because it is almost entirely irrelevant as the victim's possession of $800 at the time of the robbery was easily explainable. For example, it was equally likely that the victim had a certain sum of money before going to the gas station and planned to obtain extra money, or that he went to the dice game with $250 and won the additional $550 throughout the night. Indeed, the victim testified that Jones first became angry because the victim was winning money. Considering his possession of $800 is easily explainable without regard to the gas station's rules regarding ATM withdrawals, any

introduction of evidence with respect thereto would not have created a substantial defense. See *id*.

Operating under the presumption that defense counsel engaged in a reasonable trial strategy, as this Court must, *Toma*, 462 Mich at 302, it is clear that defense counsel likely considered the same facts just discussed, and made a reasonable determination that further investigation was not warranted or necessary because the evidence would not have made a difference. See *Ackley*, 497 Mich at 391; see also *Putman*, 309 Mich App at 248. This Court will not second guess that reasonable trial strategy on appeal. See *Rockey*, 237 Mich App at 76-77.

Also at trial, Officer Issa testified that when he first met with the victim, immediately following the robbery, he saw that the victim's hands were scraped. Defendant contends that had defense counsel obtained the victim's medical records or photographs of the allegedly injured hands, it would have shown that the victim did not have scraped hands, which then would have allowed defense counsel to object to Officer Issa's testimony, and have it precluded. Defendant then concludes that such evidence, or lack thereof, would have led the jury to believe that the victim was lying about the robbery. Defendant's argument again fails because he failed to prove the factual predicate for his claim. See *Cooper*, 309 Mich App at 80. The record contains no evidence that the victim's hands were not scraped when he first spoke to Officer Issa. Nor has defendant provided any proof that the medical records and photographs he alleges his counsel should have obtained actually exist. Indeed, it is equally possible, and maybe more likely, that the victim never sought medical treatment for a scraped hand, and the police did not photograph it. Contrary to the argument by defendant, a lack of medical treatment or photographs does not mean that the injury did not exist. There was no indication on the record from Officer Issa that the victim's apparent injury was serious, or required medical attention or photographing. Thus, the absence of those documents would not be determinative evidence that an injury did not occur. In light of this utter lack of support for his argument, defendant's claim in this respect must fail. See *id*.

Moreover, to the extent that defendant appears to argue that Officer Issa would have been barred from testifying regarding the victim's injuries if defense counsel had presented proof of no medical records or photographs, he is incorrect. "MRE 701 permits lay witnesses to testify about opinions and inferences that are '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue.' " *People v McLaughlin*, 258 Mich App 635, 657; 672 NW2d 860 (2003). Officer Issa observed that the victim's hands were scraped, and testified that he believed that evidence supported the victim's assertion that he had fallen while running away from Jones. Because that testimony by Officer Issa was "rationally based on the perception of the witness and helpful to a clear understanding of a fact in issue," *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994), it was admissible, with or without supporting documentation. Thus, any objection by defense counsel on that ground would have been futile, so he was not ineffective for failing to make that objection. See *Head*, 323 Mich App at 539; see also *McLaughlin*, 258 Mich App at 657. Finally, and briefly, proof that the victim was not injured as alleged would not have provided defendant a substantial defense because proof of an injury to a victim was not an element of any of the charged offenses. See *Putman*, 309 Mich App at 248. Therefore, proof of a lack of an injury would not have affected the outcome of trial. See *id*.

In sum, because defendant failed to prove the factual predicate of his claims and that the proposed defenses would have been substantial, defendant's assertion that he was denied the effective assistance of counsel fails the first prong of *Strickland*, 466 US at 688.

## 4. CHARACTER EVIDENCE

Defendant next argues that defense counsel was ineffective for failing to object to inadmissible and unfairly prejudicial character evidence. Specifically, defendant identifies testimony from the police officers regarding the fact that defendant was found with six cellular telephones, $1,228 in cash, a handgun holster, and "some pills."

The Michigan Supreme Court, in considering the plain language of MRE 404(b), held that the phrasing of the rule "limits [its] scope to '[e]vidence of other crimes, wrongs, or acts' that 'are contemporaneous with, or prior or subsequent to the conduct at issue in the case' and may be offered 'to prove the character of a person in order to show action in conformity therewith.' " *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015), quoting MRE 404(b)(1). More importantly, "by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *Jackson*, 498 Mich at 262. Given that language of the rule, "acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *Id*.

As noted, defendant challenges testimony from the officers that he was found with six cellular telephones, $1,228 in cash, a handgun holster, and "some pills." Defendant contends that the introduction of that evidence made him appear to be a drug dealer, which was inadmissible character evidence. In the present case, the prosecution charged defendant with armed robbery, felon-in-possession, and felony-firearm. According to the victim's testimony, he was held at gunpoint while defendant and Melton went through his pockets, taking a cellular telephone, $800 in cash, and some cigarettes. After relieving the victim of that property, the victim saw all three men get into a white Durango, and drive away from the scene. When defendant was pulled over in the vicinity of the robbery, he was found to have the aforementioned items in the vehicle or in his pockets. The presence of cellular telephones, cash, and a handgun holster were "acts comprised by or directly evidencing the 'conduct at issue.' " See *id*. Specifically, the various telephones were evidence that defendant took a cellular telephone from the victim, the cash in defendant's pocket was evidence of the cash stolen from the victim, and the handgun holster was evidence suggesting that a handgun was in the vehicle at some point—presumably the handgun used in the robbery. Because testimony regarding the telephones, cash, and handgun holster were in regards to the crimes charged, they were "not subject to scrutiny under MRE 404(b)." *Jackson*, 498 Mich at 262. Thus, any objection by defense counsel to that evidence would have been meritless, and consequently, defense counsel was not ineffective for failing to make that futile objection. *Head*, 323 Mich App at 539.

Defendant also challenges defense counsel's failure to object to the officer's testimony that "some pills" were found in defendant's vehicle. Throughout two days of trial, the only mention of the "pills" found in defendant's pockets was a brief statement during Officer Issa's testimony. The prosecution did not mention the pills in its closing argument. Evidence of what kind of pills they actually were was never introduced.

Assuming without deciding that the "pills" in question were some form of illegal drugs, defendant has failed to overcome the strong presumption that defense counsel's failure to object was sound trial strategy. *Toma*, 462 Mich at 302. Based on our thorough review of the record, the discussion of the "pills" found in defendant's pocket was quite limited. The pills were only mentioned in passing as something found during the search, were never specifically identified, and the prosecution seemed to intentionally move away from the topic when it arose. An objection by defense counsel at that moment would have drawn intensified and unnecessary focus on the pills. Absent the objection, the pills remained undefined, and could have been over-the-counter medication such as aspirin or ibuprofen, medication that defendant was prescribed, or, at worst, illegal street drugs. If defense counsel had objected, the jury likely would have been pushed to assume that the pills were negative in some manner. By not objecting, defense counsel allowed the jury to avoid focusing on those pills and their nature. As this Court previously has acknowledged, experienced attorneys are "certainly aware that 'there are times when it is better not to object[,]' " even to obvious errors. *Unger*, 278 Mich App at 242. In this instance, we must presume that defense counsel's decision was strategic, and under the facts presented it certainly was a reasonably strategic choice. See *Toma*, 462 Mich at 302; see also *Unger*, 278 Mich App at 242.

To summarize, defense counsel's objection to evidence of the cellular telephones, $1,228 in cash, and handgun holster would have been futile, and defense counsel's lack of objection to the mention of "some pills" found in defendant's pocket was reasonable trial strategy. Because this Court will not find trial counsel to be ineffective where an objection would have been futile or second guess matters of trial strategy, defendant's arguments fail the first prong of the *Strickland* analysis. *Strickland*, 466 US at 688; *Thomas*, 260 Mich App at 457; *Rockey*, 237 Mich App at 76-77.

## 5. ALLEGED PROSECUTORIAL MISCONDUCT

Defendant also argues that defense counsel was ineffective for failing to object to two separate instances of prosecutorial misconduct.[11] Initially, he argues that defense counsel should have objected to the prosecution's misstatement of facts in the record during its closing argument. We initially consider whether the prosecution's statements actually were improper. "[A] prosecutor is free to argue the evidence and all reasonable inferences arising from it as [it] relate[s] to . . . [the] theory of the case." *Johnson*, 315 Mich App at 201 (quotation marks omitted; alterations in original). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Defendant challenges the statement during the prosecution's closing argument that the cellular telephone found in the white Durango was the "same phone" as the one reported stolen

---

[11]We employ the phrase "prosecutorial misconduct" as a term of art synonymous with "prosecutorial error," not as an indication that the prosecution engaged in intentional misconduct. *Jackson*, 313 Mich App at 425.

from the victim. Defendant's argument relies on the fact that Officer Issa testified that he never was able to definitively verify that the LG K7 cellular telephone found in the vehicle driven by defendant was the exact one taken from the victim. Importantly, although Officer Issa never was able to specifically identify the cellular telephone as belonging to the victim, he also never was able to rule it out, because he could not get the telephone to power on.

During closing argument, the prosecution is permitted to argue inferences from the evidence that support its theory of the case. See *Johnson*, 315 Mich App at 201. It was reasonable for the prosecution to infer that the LG K7 cellular telephone owned by the victim, which he reported was stolen by someone who drove away in a white Durango, was the same LG K7 model telephone that was found in the white Durango in which defendant was pulled over near the scene of the robbery. See *id*. Nor was it an error to argue that the telephones were the same to the jury in a persuasive manner because, as noted, the prosecution is not required to make its arguments using "the blandest possible terms." *Dobek*, 274 Mich App at 66. In any event, the jury was instructed that the statements of the lawyers were not evidence, and "[b]ecause jurors are presumed to follow their instructions . . . any error was harmless." *Henry*, 315 Mich App at 150 (citation omitted).

Therefore, the prosecution did not commit error by making the challenged argument, and defense counsel was not ineffective for failing to make a futile objection thereto. *Strickland*, 466 US at 688; *Head*, 323 Mich App at 539.

Defendant lastly argues that defense counsel should have objected when, at the first sentencing hearing, the prosecution threatened the victim with perjury charges should he recant and provide differing testimony from that given during the preliminary examination. Defendant contends that the prosecution's actions violate our Supreme Court's ruling in *People v Pena*, 383 Mich 402, 406; 175 NW2d 767 (1970) (opinion by KAVANAGH, J.) ("A prosecutor may impeach a witness in court but he may not intimidate him—in or out of court.").

First, the record is not as clear as defendant suggests with respect to the allegation that the prosecution "threatened" the victim with perjury charges should he recant. Despite that, we need not, and decline to, decide that issue because any error by the prosecution was rendered entirely and utterly harmless by our remand. Defendant's argument on appeal is that the trial court would have allowed a new trial if it was permitted to hear that the victim recanted his testimony about the presence of a handgun during the robbery. According to defendant, it was the prosecution's threat of perjury that ultimately led to the trial court's failure to hear the victim's recantation. Nevertheless, a panel of this Court remanded to the trial court to consider whether a new trial was warranted because of, among other circumstances, the victim's recantation as provided in an affidavit. Thus, regardless of any error by the prosecution or defense counsel's failure to object, the trial court ultimately considered the victim's recantation, and found it to be without merit. Whether that decision by the trial court was proper is analyzed in Section VI of this opinion. Consequently, there is no possibility that, absent defense counsel's failure to object, " 'the result of the proceeding would have been different,' " because the "result" obtainable by such an objection actually was obtained during the remand proceedings. *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669. Thus, defendant's argument in this respect fails the second prong of the *Strickland* analysis. *Strickland*, 466 US at 694.

## VI. MOTION FOR A NEW TRIAL

Defendant argues that the trial court abused its discretion by denying his motion for a new trial. We disagree.

## A. STANDARD OF REVIEW & GENERAL LAW

"A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018). The trial court's findings of fact when considering such motions are reviewed for clear error. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003), citing MCR 2.613(C). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Miller*, 482 Mich at 544 (quotation marks and citation omitted).

" 'Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence.' " *Blevins*, 314 Mich App at 359, quoting *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). "This policy is consistent with requiring parties to use care, diligence, and vigilance in securing and presenting evidence." *Blevins*, 314 Mich App at 360 (quotation marks and citation omitted). Nevertheless, "[a] trial court may grant a defendant a new trial on the basis of newly discovered evidence . . . ." *People v Armstrong*, 305 Mich App 230, 241; 851 NW2d 856 (2014). Our Supreme Court recently restated what "a defendant must show" to obtain "a new trial . . . on the bases of newly discovered evidence" in *People v Johnson*, 502 Mich 541, 566; 918 NW2d 676 (2018), quoting *Cress*, 468 Mich at 692: " '(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial.' " The parties and the trial court focused solely on the third and fourth factors from *Cress*, 468 Mich at 692.

## B. ANALYSIS

Defendant argues that he was entitled to a new trial on the basis of the victim's affidavit recanting his testimony about the presence of a gun, and the victim's medical records establishing a concerning mental health history. The trial court did not abuse its discretion in concluding that the new evidence did not warrant a new trial because the newly-discovered evidence would not have changed the outcome of the first trial. See *id*. Focusing first on the victim's affidavit recanting his trial testimony about a gun being present at the robbery, the trial court found that such evidence would not have changed the outcome of the trial. "In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible." *Johnson*, 502 Mich at 566-567. "In making this assessment, the trial court should consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony." *Id*. at 567. "[A] trial court's credibility determination is concerned with whether a *reasonable juror* could find the testimony credible on retrial." *Id*. "As a rule the court is not impressed by the recanting affidavits of

witnesses who attempt to show that they perjured themselves at the trial." *People v Norfleet*, 317 Mich App 649, 661; 897 NW2d 195 (2016) (quotation marks and citation omitted).

The trial court specifically found the victim's recantation to be "highly suspect and untrustworthy." In making that decision, the trial court first noted the fact that an affidavit of a witness purporting to recant his previous testimony typically is given little weight. See *id*. The trial court also referenced that between the time the victim gave his preliminary examination testimony and the time of his recantation, a very specific reason to recant had arisen. Specifically, the trial court noted that the victim was paid money to avoid appearing at trial. The trial court considered that the victim likely had the same reason for recanting his testimony. Summarizing, the trial court stated, "[a]ny trier of fact could see through common sense and reason that an individual would recant after being pressured and bribed."

On the basis of all of that evidence, the trial court's finding of fact that the victim's recantation was not credible was not clearly erroneous. *Cress*, 468 Mich at 691; MCR 2.613(C). Furthermore, in addition to all of the valid reasons identified by the trial court, defendant himself acknowledges that the victim is not a credible witness. At the hearing on the motion for a new trial, defendant's appellate counsel specifically stated that he did not believe it would be necessary to call the victim to testify considering that he lacked any credibility. Therefore, on the basis of its valid finding that the victim's recantation was "highly suspect and untrustworthy," the trial court did not abuse its discretion in holding that the fourth *Cress* factor was not met, and therefore, a new trial was not warranted because the outcome would be the same. *Cress*, 468 Mich at 691; *Norfleet*, 317 Mich App at 661.

Lastly, defendant challenges the trial court's order denying him a new trial on the basis of the discovery of the victim's medical records and mental health history. Those records show that from March 16, 2016, until January 11, 2017, the victim was treated for mental health issues, including bipolar disorder, hallucinations, and delusions. There was no evidence presented that the victim suffered from any hallucinations or delusions at the time of the robbery or at the preliminary examination.

The trial court found that this evidence did not satisfy the fourth *Cress* factor because "[n]othing in the records indicate that [the victim] is less credible because he suffers from a mental illness." That finding by the trial court was not clearly erroneous. The trial court correctly noted that the record is absent of any evidence that a diagnosis of bipolar disorder could somehow affect the credibility of a witness. Indeed, given the scant connection between bipolar disorder and the victim's credibility, it seems likely that the evidence would not have been relevant, MRE 401, and thus inadmissible, MRE 402. For that reason, the trial court did not abuse its discretion in determining that evidence of the victim's bipolar disorder diagnosis would not have changed the outcome of trial—thereby failing the fourth *Cress* factor. *Cress*, 468 Mich at 691.

Unlike the bipolar disorder diagnosis, the victim's history of delusions and hallucinations likely would have been considered relevant. Nevertheless, the trial court still did not abuse its discretion in determining that the evidence of the victim's hallucinations and delusions would not have changed the outcome of trial. This is primarily because the victim intended to recant his testimony if recalled as a witness. His recantation was not based on the fact that he

hallucinated the robbery, or that his view of the gun was the subject of a paranoid delusion, but that he lied in his preliminary examination testimony. Thus, during any retrial, a jury would be highly unlikely to believe that the victim hallucinated the presence of the gun at the robbery. Instead, the jury would be forced to choose between two options: the victim's testimony at the preliminary examination that a gun was present, and his testimony at the retrial that the gun was not present, and he previously perjured himself. The alleged delusions and hallucinations brings into question the likelihood of both versions of the event proposed by the victim—not just the first one. In other words, it is equally likely that the victim's recantation was the subject of a delusion or hallucination, rather than his original testimony being incorrect because of those same issues.

For the reasons already discussed, any reasonable juror would not believe the victim's recantation due to its scant credibility. Furthermore, the jury also would be presented with evidence that defendant was found driving the vehicle the victim identified as driving away from the robbery, defendant possessed $1,228 when the victim reported that he had been robbed of $800, defendant had a LG K7 cellular telephone—the same model reported stolen by the victim—in the vehicle, and a handgun holster also was in the vehicle. The jury also was played a jailhouse telephone call from defendant where he openly admitted to going through the victim's pockets. In light of all of that corroborating evidence, any reasonable juror would have written off the alleged delusions and hallucinations in favor of the victim's testimony before he was bribed to change it. Therefore, as the trial court determined, the evidence would not have changed the outcome of trial, so the trial court's denial of defendant's motion for a new trial was not an abuse of discretion. *Johnson*, 502 Mich at 566-567; *Cress*, 468 Mich at 691.

Affirmed.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Michael J. Riordan